Alexander PAMFILOFF, Prime Time Records, Danville Publishing Company, Plaintiffs,

v.

GIANT RECORDS, INC., a corporation, Wea Records, Inc., a corporation, Big Beat Records, Inc., a corporation, Hands on Productions, Inc., a corporation, One Two Productions, a partnership, Bass House, a partnership, Tuhin Roy, Tara Kemp, Craig Kallman, and Does 1 through 30, inclusive, Defendants.

No. C–91–1708 RFP.

United States District Court, N.D. California.

March 31, 1992.

Glendon W. Miskel, San Francisco, Cal., for plaintiffs.

Thomas S. Mahr, Katten, Muchin, Zavis & Weitzman, Los Angeles, Cal., for defendants.

## MEMORANDUM AND ORDER

PECKHAM, District Judge.

### INTRODUCTION

This matter comes before the court on Defendants' motion to dismiss and to strike portions of Plaintiffs' First Amended complaint. The complaint alleges copyright infringement and state law violations, including breach of contract and tortious denial of contract, all arising out of Defendants' alleged reproduction and sale of sound recordings of musical compositions owned by Plaintiffs. Plaintiffs claim they acquired ownership of the musical compositions for the songs "Hold You Tight", "For Two", "Too Much" and "One Love" through an agreement with Defendants in which Defendants transferred all rights in the compositions to Plaintiffs in exchange for certain royalty payments. Additionally, Plaintiffs claim they are the exclusive owners of the copyright in the sound recordings of the songs "For Two" and "Hold You Tight".

Defendants are several individual musical artists, a band known as "Bass House", and various record companies. Plaintiff Pamfiloff is a record producer and sole owner of plaintiff Prime Time Records, a musical production company, and plaintiff Danville Publishing, its publishing affiliate.

Defendants contend that the copyright infringement claims and the contractual claims must be dismissed because Plaintiffs have not been able to meet the requirement that a transfer of copyright ownership must be in writing.

### BACKGROUND

This case involves a copyright dispute between several musicians and a producer and record company. Plaintiffs claim that Defendants violated Plaintiffs' ownership of the certain musical compositions and sound recordings of those compositions.

The original complaint in this case alleged that Plaintiffs acquired the rights in the musical compositions through an *oral* agreement that transferred all of Defendants rights in four musical compositions to plaintiff Danville Publishing in exchange for half of the gross receipts attributable to those compositions.

In its order of October 28, 1991, this court dismissed the causes of action in that complaint based on copyright and contract violations because Section 204(a) of the

Federal copyright law requires that a transfer of rights in a composition must be in writing. The court also, however, granted Plaintiffs leave to amend their complaint to satisfy the writing requirement of Section 204(a).

Plaintiffs filed a First Amended Complaint on December 6, 1991 which alleges that an agreement between Plaintiff Pamfiloff and Bass House transferred to Plaintiffs the ownership rights in the musical compositions created by Defendants and thus, satisfies the writing requirement of Section 204(a).

Defendants are presently asking the court to dismiss the causes of action pertaining to this written contract because this contract does not transfer ownership rights to Plaintiffs and therefore, Plaintiffs cannot satisfy Section 204(a) which requires that a transfer of copyright must be in writing.

Specifically, Defendants ask that the court dismiss Plaintiffs' causes of action for breach of contract, interference with contractual relations and tortious denial of contract because Plaintiffs have been unable to identify an enforceable contract transferring the publication rights in the disputed musical compositions to Plaintiffs.

Additionally, Defendants seek dismissal of Plaintiffs' claim for copyright infringement of the sound recordings because Plaintiffs cannot demonstrate that they had a lawful right to use the underlying musical compositions. Defendants also ask that the court dismiss the remaining state claims in the event the court dismisses the copyright claim.

## DISCUSSION

### 1. *Dismissal of Contractual Claims*

■ The federal Copyright Act invalidates any oral transfer of copyright ownership:

A transfer of copyright ownership, other than by operation of law, is not valid unless an instrument of conveyance, or a note or memorandum of the transfer, is in writing and signed by the owner of the rights conveyed or such owner's duly authorized agent.

17 U.S.C. § 204(a). Plaintiffs acknowledge and accept this requirement but claim that they have successfully amended their complaint to comply with the terms of this statutory provision. While their initial complaint was dismissed because they alleged an oral agreement between themselves and Defendants purporting to transfer ownership of certain musical compositions, they are now claiming that a recording agreement between plaintiff Pamfiloff and Bass House, a band composed of certain of Defendants, is sufficient to meet the requirements of the copyright law.

Plaintiffs' claim to have met the requirements of Section 204(a) is, however, without merit. The recording agreement which Plaintiffs attached to their First Amended Complaint as Exhibit A makes no mention of any transfer of ownership rights in the musical compositions. Instead, it is clearly a contract which grants to Plaintiffs limited recording rights in the compositions. Thus, on its face it does not satisfy the requirements of Section 204(a).

Plaintiffs maintain that despite the fact that the contract makes no mention of the transfer of ownership rights to Plaintiff, it was intended by the parties to have such effect and therefore, should be construed to have that effect. In addition, Plaintiffs argue that a second document, containing a reference to certain royalty payments to Defendants that would be consistent with the transfer of broader rights than recording rights, provides additional evidence that the written contract was intended to transfer ownership in the musical compositions to Plaintiffs.

This additional agreement was never signed by any party and contains no date. In addition, the document does not purport to transfer any rights and only makes reference to a royalty structure which Plaintiffs claim was of sufficient proportions to indicate that Plaintiffs understood Defendants to have transferred more than their recording rights to Plaintiffs.

Plaintiffs acknowledge that the Recording Agreement does not explicitly state

that ownership rights in the musical compositions will transfer to Plaintiffs. They argue, however, that the combination of the written recording contract and the unsigned and undated document which makes reference to a certain royalty payment scheme is sufficient to meet the requirements of Section 204(a).

■ The court does not agree. Section 204(a) requires that the transfer of copyright ownership must be made in writing through an instrument of conveyance or a note or memorandum of transfer signed by the owner of the rights. The copyright laws do not specify what constitutes a sufficient note or memorandum. Section 204(a) is analogous to a statute of frauds, however, as its purpose "is to protect copyright holders from persons mistakenly or fraudulently claiming oral licenses". *Eden Toys, Inc. v. Florelee Undergarment Co., Inc.*, 697 F.2d 27, 36 (2nd Cir.1982); *Effects Associates, Inc. v. Cohen*, 908 F.2d 555, 557 (9th Cir.1990), *cert. denied*, — U.S. ——, 111 S.Ct. 1003, 112 L.Ed.2d 1086 (1991). Thus, it is appropriate to borrow the requirements necessary to satisfy the statute of frauds to determine whether a given document satisfies Section 204(a).

■ Generally, in order to satisfy the statute of frauds a writing must (1) reasonably identify the subject matter of the agreement, (2) be sufficient to indicate that the parties have come to an agreement, and (3) state with reasonable certainty the essential terms of the agreement. *See* Restatement (2d) of Contracts § 131 (1981); *Mellencamp v. Riva Music Ltd.*, 698 F.Supp. 1154, 1163 (S.D.N.Y.1988).

Neither the Recording Agreement nor the additional contract containing the reference to the royalty percentage is a sufficient note or memorandum transferring ownership of a copyright. The Recording Agreement does not identify the subject matter in that it makes no reference to publishing rights or rights to musical compositions. The only rights it mentions are recording rights. The only reference to "composing" is in paragraph 1.7, which provides that in order to meet the quota the "artist must have composed, arranged

and completed, new original music and lyrics for a minimum of two (2) 12" recordings consisting of two (2) to three (3) songs each." There is nothing to suggest a transfer or conveyance of any rights in the musical compositions. The fact that the sound recordings, which are the subject of the recording Agreement, must be based on original compositions does not effectuate an implied transfer of rights in the underlying compositions. 17 U.S.C. § 103(b).

Moreover, none of the "essential terms" pertaining to a transfer of rights in the musical compositions is contained in the Recording Agreement. There are no provisions transferring to plaintiff any of the rights to reproduce, perform, distribute, market, promote, or otherwise exploit the compositions. There is no provision regarding the receipt or administration of revenue generated from the compositions, such as revenue from radio plays and live performances. There is no provision stating the amount of royalties to be paid to the authors of the musical compositions. Indeed, the Recording Agreement only provides for payment to Bass House of a certain percentage of the net revenue derived from the sale of sound recordings.

Similarly, the other document upon which Plaintiffs attempt to rely contains no language purporting to transfer rights to Plaintiffs. The document specifically states that Plaintiffs are not a party. By its terms it is a document which sets out the distribution of royalty payments received for the sound recordings which are the subject of the Recording Agreement. In order to satisfy Section 204(a), Plaintiffs have requested that they be able to conduct discovery to obtain a signed copy of this document. Such a signed copy, however, will not satisfy the requirements of Section 204(a). Thus, Plaintiffs are without evidence of a writing sufficient to satisfy the requirements of Section 204(a).

■ In a final effort to save their claims, Plaintiffs seek to invoke the doctrine of equitable estoppel and thereby circumvent the writing requirements of Section 204(a). Plaintiffs argue that Defendants should be

barred from relying upon the requirements of Section 204(a) to invalidate the alleged copyright transfer because Defendant Roy encouraged Plaintiffs to consider themselves owners of the musical compositions and thereby committed fraud, thus taking the transaction outside the copyright statute of frauds.

The requirement of a written transfer contained in Section 204(a) enhances the predictability and certainty of copyright ownership and thus serves Congress' paramount goal in revising the Copyright Act in 1976. *See CCNV v. Reid,* 490 U.S. 730, 749, 109 S.Ct. 2166, 2177, 104 L.Ed.2d 811, 830 (1989). Although they could have done so, Congress did not include within the terms of Section 204(a) any indication that equitable defenses such as estoppel which grew up around the common law statute of frauds should apply in the context of copyright transfer. This court is, therefore, hesitant to read such a provision into the terms of Section 204(a) and thereby undermine the goal of uniformity and predictability in the field of copyright ownership and transfer.

Furthermore, Plaintiffs are unable to locate a single case in which a court allowed the doctrine of equitable estoppel to be used to circumvent the writing requirement of Section 204(a) and thus, bestow upon a party substantive copyright ownership absent a written agreement to that effect. Additionally, none of the commentators in the field of copyright law have suggested the application of equitable defenses to the requirements of Section 204(a). In general, the commentators agree that an assignment of copyright which is not memorialized in writing is not effective to transfer the copyright. Thus, the provisions of Section 204(a) appears to do more than transfer a general statute of frauds to copyright. Instead, they provide the requirements for the very validity of a given transfer.

In contrast to the general statute of frauds which ensures that important transactions are clearly documented, we interpret Section 204(a) to provide protection for the author and creator of copyrighted material against fraudulent claims of transfer. Thus, we understand the policy underlying Section 204(a) to be tipped somewhat in favor of the original holder of the copyrighted material. To allow claims of equitable estoppel to be asserted by individuals claiming to have subsequently obtained ownership of the copyrighted material and thus circumvent the simple requirement that a transfer be in writing would eliminate such a favoring of the author and creator of a work.

Plaintiffs, who are not the authors of the works at issue, are asking this court to transfer ownership to them despite their failure to comply with the express requirements for copyright transfer contained in Section 204(a). As noted above, Section 204(a) contributes to the increased predictability and certainty of copyright ownership and prevents a copyright holder from inadvertently transferring ownership rights. We reject Plaintiffs' request that we apply equitable estoppel to affirmatively transfer to them those rights which originally attached to the creators of the work.

Defendants have noted the refusal of a Florida district court to allow the defense of estoppel to be invoked by a defendant to determine copyright ownership despite the court's acknowledgment that such a defense could be asserted by the alleged infringers in a later copyright infringement action. *Neva, Inc. v. Christian Duplications Intern., Inc.,* 743 F.Supp. 1533, 1548 (M.D.Fla.1990) ("While these affirmative defenses may be properly asserted in an infringement action, they are not properly asserted in this action to determine the ownership of the copyright.") The *Neva* court concluded that use of estoppel was inappropriate because the court had already determined that the plaintiff retained ownership in the copyright. Thus, the court refused to allow the defendants to invoke the doctrine of equity to transfer the ownership rights. Similarly, this court will not allow the doctrine of equitable estoppel to be invoked to transfer ownership of the copyright which originally vested in the works' authors.

■ Thus, Plaintiffs have not pled and cannot plead compliance with the terms of Section 204(a). Accordingly, Plaintiffs' causes of action for breach of publishing agreement must be dismissed with prejudice because the agreement was not valid. *Valente–Kritzer Video v. Pinckney*, 881 F.2d 772, 774 (9th Cir.1989), *cert. denied*, 493 U.S. 1062, 110 S.Ct. 879, 107 L.Ed.2d 962 (1990). Moreover, because the alleged publishing contract is unenforceable as a matter of law, Plaintiffs cannot state a claim for bad faith denial of its existence. *Id.* at 776. (upholding dismissal of claim for tortious denial of existence of unenforceable oral contract involving purported transfer of copyrights). Thus, Plaintiffs' cause of action for tortious denial of the existence of the alleged publishing agreement must be dismissed with prejudice.

■ Similarly, to the extent that Plaintiffs' seventh cause of action for interference with contract attempts to assert a claim against Defendants for interference with contract with respect to the alleged publishing agreement, that cause of action must be dismissed. A claim for interference with contractual relations requires the existence of a valid contract. *Pacific Gas & Electric Co. v. Bear Stearns & Co.*, 50 Cal.3d 1118, 1126, 270 Cal.Rptr. 1, 791 P.2d 587 (1990).

### 2. *Copyright Infringement Claim:*

Plaintiffs have brought a claim of copyright infringement in the sound recordings of "Hold You Tight" and "For Two". Plaintiffs have copyright certificates indicating that Pamfiloff owned the sound recordings to these two songs. This court acknowledged in its previous order that such certificates were prima facie evidence of Pamfiloff's exclusive rights in the sound recordings. The court also noted, however, that Defendants could dispel the presumption created by those certificates. In an effort to dispel the presumption, Defendants argue that Plaintiffs are without rights in the underlying musical compositions because of their failure to identify a written document according to which they obtained ownership rights in the musical compositions.

■ In order to obtain a valid copyright in a sound recording, the copyright claimant must lawfully have secured a right to exploit the musical compositions recorded therein. "A sound recording is a derivative work in relation to the musical work recorded therein." 2 M. Nimmer, *Nimmer on Copyright* § 2.10[A] at 2–140 n. 8 (1991); *see* 17 U.S.C. § 101. Copyright protection for a sound recording of musical compositions must be denied if the copyright claimant of the sound recording has not lawfully obtained the rights to utilize the musical compositions in the sound recordings. *See* 17 U.S.C. § 103(b) (Derivative works may be copyrighted, "but protection for a work employing pre-existing material in which copyright subsists does not extend to any part of the work in which such material has been used unlawfully.") "If the pre-existing [copyrighted] material used without permission 'tends to pervade the entire derivative work', copyright protection is denied to the derivative work entirely". *Dynamic Solutions, Inc. v. Planning & Control, Inc.*, 646 F.Supp. 1329, 1340 (S.D.N.Y.1986).

Thus, because Plaintiffs are without a written document transferring ownership in the musical compositions, Defendants argue that Plaintiffs are necessarily without any rights in the underlying musical compositions and consequently, their claims for copyright ownership in the sound recordings of "Hold You Tight" and "For Two" must fail as a matter of law, and the claim for copyright infringement must be dismissed.

■ In opposition, Plaintiffs argue that they obtained an implied nonexclusive license to use the musical compositions through the Recording Agreement because such an agreement would be worthless to them if they were prevented from using the recordings because they did not have permission to use the underlying musical compositions. Although Section 204(a) requires that transfers of copyright ownership must be in writing, it is generally recognized that a "nonexclusive" license

can be granted orally or implied from conduct. 3 M. Nimmer & D. Nimmer *Nimmer on Copyright* Section 10:03[A] at 10–38 (1991). This conclusion is not contained in the language of the statute. Instead, it is inferred from the fact that a non-exclusive license is not an ownership interest and because Section 204(a) applies to the transfer of "ownership", the non-exclusive license is beyond its purview. *Id.*

■ This court agrees with Plaintiffs' assertion that the Recording Agreement must be interpreted to contain an implied nonexclusive license to use the musical compositions and therefore, we must reject Defendants' claim that Plaintiffs' copyright claim in the sound recordings is invalid. Consequently, we must deny Defendants' motion to dismiss the sound recording infringement claim on the ground that Plaintiffs did not lawfully acquire the right to use the underlying musical compositions.[1]

### 3. *Remaining State Claims*

Because the copyright infringement claim has not been dismissed this court retains jurisdiction over the remaining state claims under the doctrine of supplemental jurisdiction.

### CONCLUSION

1. Defendants' motion to dismiss Plaintiffs' claims for breach of contract, tortious denial of contract and interference with contract are dismissed to the extent they pertain to breaches of an alleged publishing agreement according to which Defendants transferred to Plaintiffs ownership rights in the musical compositions because Plaintiffs have failed to comply with the requirements of Section 204(a) of the Copyright Act.

2. Defendants' motion to dismiss Plaintiffs' claim for copyright infringement is denied.

3. Defendants' motion to dismiss Plaintiffs' remaining state law claims is denied.

---

1. The conclusion that the Recording Agreement contained an implied non-exclusive license does not transfer to Plaintiffs any ownership interest in the musical compositions because a non-exclusive license to use a musical composition does not constitute a transfer of any ownership interest in the musical composition. *See* 17 U.S.C. § 101. Thus, the presence of an implied non-exclusive license to use the musical compositions does not affect this court's ruling that Plaintiffs are unable to meet the requirements of Section 204(a) with respect to the alleged publishing contract.